## HEINKE v. CHIPMAN KNITTING MILLS.

(District Court, E. D. Pennsylvania. May 14, 1927.)

### No. 3083.

**1. Patents ⊜65—To establish anticipation by prior patent, it must be shown that essential elements of later patent were disclosed in the earlier one.**

The presumption of validity of a patent is not rebutted, where the defense is a prior patent, except by showing that the disclosure of the earlier patent anticipated the essential elements of the subsequent one.

**2. Patents ⊜328—1,399,299, for method of knitting stockings, held valid, but not infringed.**

The Heinke patent, No. 1,399,299, for method of knitting stockings, *held* not anticipated and valid, but not infringed.

In Equity. Suit by Albert B. Heinke against the Chipman Knitting Mills. On final hearing on bill, answer, and proofs. Decree for defendant.

Robert M. Barr, of Philadelphia, Pa., for plaintiff.

Fraley & Paul, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The plaintiff sues for infringement of his patent, No. 1,399,299, granted December 6, 1921, upon an application filed May 17, 1921, for a new method of knitting stockings having a seamless leg and heel and a full-fashioned foot. The defendant is and has been for many years engaged in the manufacture of stockings at Easton, Pa.

The answer denies infringement, sets up prior invention by patent No. 924,605, granted June 8, 1909, to Albert Gee, and public use and sale under the Gee patent for more than two years prior to Heinke's application, and that the defendant has acquired the ownership of the Gee patent, and has engaged in manufacture and sale under the claims of that patent.

There are two methods of knitting stockings; one known as full-fashioned knitting upon a flat machine, which produces a stocking shaped in leg form, then folded and seamed along the meeting edges in order to form a complete stocking; the other, circular or seamless knitting, in which the stocking is knitted in the form of a tube of the same width throughout, conformity to the shape of the leg and foot being obtained by pressing and stretching the texture. The full-fashioned process is much more expensive than the circular or seamless process.

The plaintiff's patent combines the two processes; the seamless leg being knitted by the circular method, and a full-fashioned foot added by knitting upon a flat machine. It combines the general appearance of the full-fashioned stocking with the low cost of the circular knitting. The plaintiff's method is carried out by knitting upon a circular knitting machine a seamless stocking leg and terminating the knitting of the front part of the stocking at the instep, but continuing to knit about the back part of the stocking to form a seamless heel as a prolongation of the seamless leg. When that step in the process has been reached, the stocking drops out of the machine, or, to use the term of the trade, "presses off." The final course of knitting is formed loose. After pressing off, the knit tube or leg, with its prolongation of a heel, is slit with a knife or scissors along the median line of the heel and the back of the leg; the slit being of sufficient length to permit the lower course in front, to which the instep is to be knitted and the outward edges of the heel, to open on a straight line and to be fitted upon a straight transfer bar. The foot is then knit in flat formation by the full-fashioned method of knitting. When the knitting of the foot is completed, the edges of the foot and heel are seamed together to complete the stocking.

We will take claim 3 as substantially covering what plaintiff claims as his invention. It reads:

"3. The method of forming a stocking by knitting a seamless leg terminating at the instep on one-half of the leg, and continuing to knit the heel upon the other half of the leg forming a seamless heel, and forming a loose course around the termination of the heel and instep, slitting the fabric to permit the same to be extended in flat formation, and knitting a foot in flat formation to the heel and to the instep, and seaming together the edges of the foot and the slit edges of the fabric to complete the stocking."

The defendant became the owner of the Gee patent on May 5, 1923. It is claimed that its method of knitting stockings with a seamless leg and full-fashioned foot has always been under the Gee patent, that the Gee patent anticipated the plaintiff's claim of invention, and that, if it had been considered by the Patent Office, the Heinke patent would not have been granted.

As an illustration of the claims of the Gee patent, we will consider claim 1:

"1. The improvement in the art of knit-

ting fashioned hosiery, which consists in first knitting the leg as a continuous tubular web; then knitting simultaneously two straight, but complementary, selvaged webs as integral prolongations of the tubular web, one to form the heel and one as a false instep; then discarding the false instep and knitting the foot as a flat web, the first course of which is drawn through the selvage loops of the heel web, and also the loops of that portion of the terminal course of the leg tube from which the false instep originates; and completing the stockings by uniting the edges of the foot and heel portions."

The second claim adds to the process "cutting away so much of the central part of the heel web and the ankle portion of the leg tube at the back as is required to fashion these parts and uniting the cut edges together."

In all of the claims of the Gee patent, the knitting of the circular web is continued to the extent to which the heel portion is prolonged; that part in front, known as the false instep, having selvaged edges along the sides, the medial line of the heel being separate in the knitting, and the two-heel tabs having selvaged edges. The circular formation of the leg in the Gee patent is accomplished by continuous knitting, without the leg portion for each stocking being pressed off, as in the Heinke patent, but being a continuous process of knitting, repeating at intervals of the length the false instep and heel tabs with their selvaged edges.

Gee, the inventor, who was called as a witness, tersely and satisfactorily explained the reason why he had not conceived or set out in his specification of claims the method of discontinuing the knitting at the instep, as was done by Heinke. He says: "As I remember, the machine at that time would not work to make the heel separate, without the instep. It never entered my mind that such a thing could be done." There was no testimony in the case to contradict the fact there stated.

On the part of the defendant, attention is directed to a statement in Gee's specification as follows: "According to my process I knit the leg of a stocking as a tubular web, upon a circular knitting machine, and also upon the same machine in integral prolongation of a limited portion of the tubular web, I knit a straight selvaged web to form the heel of the stocking, and then transfer the work to a flat machine and knit a foot portion, as, for instance, a full-fashioned French foot, in continuity with the heel selvages

and the instep portion of the terminal course of the tubular web."

In view of the patentee's testimony of his memory of the machine in use at the time of his invention, which is fixed by his application as of November 18, 1907, and in the absence of any claim by Gee for a method in which the knitting of the instep ceased where the heel knitting began, this loose, unexplained reference may not be construed as an anticipation of Heinke's claims. American Stainless Steel Co. v. Ludlum Steel Co. (C. C. A.) 290 F. 103; Dick v. Underwood Typewriter Co. (D. C.) 246 F. 309; Merrell-Soule Co. v. Powdered Milk Co. (D. C.) 215 F. 922. Moreover, the drawings of the Gee patent do not disclose the method contended for, while the drawings in the Heinke patent clearly show that the knitting of the instep ceases where the formation of the heel begins.

[1] Stress has been laid upon the fact that the heel is knit as shown in the Gee patent to consist of two tabs to form a square heel, while the heel in the Heinke patent is knitted as a seamless round heel. This but adds another element of difference between the claims as construed by the specifications and drawings. There is nothing in the record to show that the Patent Office did not consider the Gee Patent when the Heinke application was before it. There is a presumption in favor of the validity of a patent, and this presumption is not rebutted, except by a showing, where the defense is a prior patent, that the disclosures of the earlier patent anticipated the essential elements of the subsequent one. This burden has not been sustained by the evidence, and the presumption is strengthened by the fact that the Gee patent and Heinke patent were classified in subdivision 4 under class 66 at the time of their issuance, and the former would naturally have been considered in connection with Heinke's application.

[2] Taking up next the question of infringement, the defendant is manufacturing, and has been manufacturing, by a method quite close in likeness to that of Heinke. This is shown by the evidence offered by the defendant of the application of Frank L. Chipman for a patent for improvements in the method of producing mock-fashioned hosiery, for the purpose of showing exactly the defendant's method.

From the evidence of what Heinke saw being done at the defendant's mills, the exhibits of the stockings manufactured by the defendant, and the admissions of the defendant's witnesses, it appears that the defendant is not following Gee's method, in that the false instep is eliminated in the defendant's manufacture, and the knitting of the instep stops, as in the Heinke method, where the knitting of the heel begins. It differs, however, from the Heinke method, in that the Heinke patent, as shown by the claims, the specifications, and the drawings, calls for a seamless heel curved to conform to the shape of the human heel, knit on a seamless machine, and not a fashioned heel, as that term is known in the trade. The defendant knits the two heel tabs so as to form a square heel, which afterwards becomes a fashioned heel through cutting it to shape, along with the shaping of the seamless knit leg, by cutting and seaming to conform it to the shape of the leg. The defendant is, therefore, not closely following the Gee patent, inasmuch as the knitting of the false instep and the subsequent cutting or raveling away, after joining the leg with the flat knit foot, is not practiced in its manufacture. While its method in respect to the omission of the false instep is practically identical with that of Heinke, there is in the defendant's method a material departure from the method of the Heinke patent. The square heel made by the defendant is essentially different from the shaped and seamless heel of Heinke, made in the continuous process of knitting the leg and heel on the seamless machine. Heinke was not a pioneer in his invention of a seamless stocking with a full-fashioned foot, and his patent must be strictly construed by what his claims mean, as shown by the specifications and drawings. The square heel is nowhere present in the Heinke patent, and on that ground it is held that the defendant has not infringed.

A decree may be entered in accordance with this opinion, dismissing the bill, with costs to the defendant.